UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DUKES CLOTHING, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:20-cv-860-GMB |
| THE CINCINNATI INSURANCE COMPANY, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Before the court is the Motion to Dismiss (Doc. 18) filed by Defendant The Cincinnati Insurance Company ("Cincinnati"). The motion is fully briefed and ripe for decision. Docs. 19 & 25–27. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8. For the following reasons, the motion is due to be granted.

### **I. STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim

is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice, *Iqbal*, 556 U.S. at 678.

## II.  FACTUAL BACKGROUND

This case centers on an insurance policy that Plaintiff Dukes Clothing, LLC ("Dukes Clothing") purchased from Cincinnati. Doc. 1 at 2.  According to the Complaint, the policy provides business income coverage for both of Dukes Clothing's retail locations. Doc. 1 at 2.  Dukes Clothing alleges that "[a]s a result of COVID-19, civil authority declarations from the State of Alabama and a direct exposure of COVID-19 from a customer, [it] was forced to close both of its insured locations." Doc. 1 at 3.  As Dukes Clothing describes in its complaint, COVID-19 is a virus that spreads primarily through person-to-person contact. Doc. 1 at 11.  But it also can spread by airborne transmission and by contact with contaminated surfaces. Doc. 1 at 12.  In response to the COVID-19 pandemic, "governments across the globe imposed strict limitations and lockdowns on businesses" to promote social

distancing and slow the spread of the virus. Doc. 1 at 13.

On April 20, 2020, Dukes Clothing made a claim on its policy for loss of business income coverage due to the closure of its stores. Doc. 1 at 3. On April 29, 2020, Cincinnati denied the claim, asserting that there was no direct physical loss to the covered property and that the policy's pollution exclusion applied. Doc. 1 at 3. Dukes Clothing then brought this action against Cincinnati, alleging breach of contract (Count I), bad faith (Counts II and III), and negligence (Count IV). Doc. 1 at 18–23.

### III.  DISCUSSION

Cincinnati focuses its arguments on Dukes Clothing's breach of contract claim and does not "directly seek dismissal of the bad faith claim per se." Doc. 26 at 1–2. However, the court may dismiss a party's claims *sua sponte* and without notice and an opportunity to replead if amendment of the complaint would be futile. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015). For the reasons discussed below, the court will grant Cincinnati's motion to dismiss the breach of contract claim and dismiss the remaining claims *sua sponte*.

**A.     Breach of Contract**

Cincinnati argues that Dukes Clothing's complaint should be dismissed because losses caused by COVID-19 and government closure orders related to COVID-19 are not covered by the policy. Doc. 19 at 1–2. To trigger coverage,

3

Dukes Clothing must have suffered "direct 'loss' to property."[1] Doc. 19-1 at 80. The policy defines "loss" as "accidental physical loss or accidental physical damage." Doc. 19-1 at 88. Thus, Dukes Clothing can only recover under its business income policy if it can show that its properties suffered direct physical loss or damage.

The policy does not have a choice-of-law provision, so Alabama law governs this contract dispute. *Cherokee Ins. Co. v. Sanches*, 975 So. 3d 287, 292 (Ala. 2007) (holding that the law of the state of contract formation governs a contractual dispute absent a choice-of-law provision). However, there is no Alabama caselaw "addressing whether a temporary inability to use one's property for its intended purpose constitute[s] a 'direct physical loss of property.'" *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142, at *5 (S.D. Ala. Oct. 21, 2020). This court therefore relies on Alabama law's standard tools of insurance contract construction.

> When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. A court must not rewrite a policy so as to

---

[1] The court may consider insurance policies attached to or referenced in the complaint when resolving a Rule 12(b)(6) motion. *Valley Creek Land & Timber v. Colonial Pipeline Co.*, 432 F. Supp. 3d 1360, 1363 (11th Cir. 2020).

include or exclude coverage that was not intended. However, if a provision in an insurance policy is found to be genuinely ambiguous, policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.

*Travelers Cas. & Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695, 699–700 (Ala. 2012) (quotation marks and citations omitted). "The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308–09 (Ala. 1999) (citations omitted). Further, "a court cannot consider the language in the policy in isolation, but must consider the policy as a whole." *Id.* at 309 (internal citation omitted).

A few courts have found that business shutdowns caused by the COVID-19 pandemic fall within the plain meaning of "direct physical loss." *See, e.g.*, *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020). In *Studio 417*, the court turned to the Merriam-Webster dictionary, which defines "direct" as "characterized by close logical, causal or consequential relationship," "physical" as "having material existence," and "loss" as "the act of losing possession" and "deprivation." *Id.* Relying on those definitions, the court found that the plaintiffs had alleged a causal relationship between COVID-19 and their losses. *Id.* The *Studio 417* plaintiffs claimed that COVID-19 was a "'physical substance'" that "attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable.'" *Id.* (quoting plaintiffs' complaint). The court found that the plaintiffs

5

had adequately alleged direct physical loss based on "the plain and ordinary meaning of the phrase." *Id.* (quotation marks omitted).

Dukes Clothing also relies on *Gregory Packaging, Incorporated v. Travelers Property Casualty Company of America*, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014), which found that a building can suffer direct physical loss even with no material change to the building's structure. The *Gregory Packaging* court found that a release of ammonia caused direct physical loss to the plaintiff's facility. The ammonia "physically transformed the air" within the facility and rendered it "unfit for occupancy until the ammonia could be dissipated." *Id.* Like ammonia, COVID-19 can be airborne but can also be transmitted by contact with contaminated surfaces. Doc. 1 at 12.

In response, Cincinnati argues that Dukes Clothing has not alleged direct physical loss or damage because COVID-19 did not cause "a physical or structural alteration of Plaintiff's property." Doc. 19 at 12. Many courts agree that direct physical loss or damage requires physical alteration of the property. *See, e.g.*, *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020) (granting motion to dismiss because "coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property").

This court finds that only Cincinnati's understanding of the intended meaning of "direct physical loss or damage" conforms with the plain meaning of the words

6

and harmonizes with the terms of the policy as a whole. The policy's definition of "loss" is circular. *See* Doc. 19-1 at 88 (defining "loss" to include "accidental physical loss"). Therefore, the court must turn to dictionary definitions to understand the plain meaning of direct physical loss or damage. *Travelers*, 117 So. 3d at 700 & 703. "Loss" is defined as "ruin, destruction," *Loss*, Oxford English Dictionary, available at www.oed.com ("Oxford English Dictionary"), and "damage" as "[i]njury, harm; *esp.* physical injury to a thing, such as impairs its value or usefulness." *Damage*, Oxford English Dictionary, *supra*. The court must read loss and damage as having distinct meanings so that neither term is superfluous. *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003). The court therefore interprets "damage" to be a lesser harm than "loss," which results in total ruin. *See The Woolworth LLC v. The Cincinnati Ins. Co.*, 2021 WL 1424356, at *4 (N.D. Ala. Apr. 15, 2021). Thus, although the terms vary in the degree of harm they describe, they share the same essential character. And within the context of this policy, both loss and damage to property must be "physical," which is defined as "of or relating to matter or the material world; natural; tangible, concrete." *Physical*, Oxford English Dictionary, *supra*. While COVID-19 particles are a physical manifestation of the virus, Dukes Clothing has not alleged that they caused physical harm to property within the meaning of the policy.

The entirety of the policy language confirms that direct physical loss or

damage requires an actual physical change to property that COVID-19 particles cannot cause. For example, the policy covers loss of business income only during the Period of Restoration (Doc. 19-1 at 34), which begins at the time of the direct physical loss and ends when the property "should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location." Doc. 19-1 at 54–55. This definition leads to the conclusion that direct physical loss must be a loss requiring repair, rebuilding, or replacement. Cleaning and disinfecting are all that is required for restoring the usefulness of a building contaminated by COVID-19. *See R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021) ("COVID-19 does not impact physical structures, other than to require additional cleaning and sanitizing of those structures."). Thus, the question is whether Dukes Clothing can shoehorn cleaning or disinfecting into the definitions of repair, rebuild, and replace. "Rebuild" is defined as "[t]o build something . . . again or differently," *Rebuild*, Oxford English Dictionary, *supra*, and "replace" as "[t]o provide a substitute for; to put an equivalent in place of (something lost, broken, etc.)." *Replace*, Oxford English Dictionary, *supra*. Cleaning and disinfecting do not fall within the scope of these two definitions under any reasonable interpretation of the terms. "Repair" is defined as "[t]o restore (a damaged, worn, or faulty object or structure) to good or proper condition by replacing or fixing parts; to mend, fix." *Repair*, Oxford English Dictionary, *supra*.

Cleaning and disinfecting do not involve replacing or fixing parts, and a structure is not faulty because it has a contaminated surface that can be decontaminated by cleaning and disinfecting.

The Eleventh Circuit's holding in *Mama Jo's, Incorporated v. Sparta Insurance Company*, 823 F. App'x 868 (11th Cir. 2020), illustrates the distinction between cleaning and repairing.  In *Mama Jo's*, dust and debris entered a restaurant due to nearby road construction, causing a slowdown in the restaurant's business. *Id.* at 871.  The restaurant had an insurance policy covering "direct physical loss of or damage to Covered Property." *Id.*  Applying Florida law, the Eleventh Circuit interpreted the phrase "direct physical loss" to require "actual" loss. *Id.* at 879 (citations omitted).  The court concluded that the dust and debris did not cause an actual loss because the property needed only thorough cleaning to restore it to its previous condition. *Id.*  Like dust and debris, this court concludes that a viral contaminant can be purged with cleaning and disinfecting and does not create the type of actual loss or damage contemplated by the policy's definition of "Period of Restoration."

Dukes Clothing alleges three reasons for its closure and resulting loss of business income: (1) COVID-19, (2) closure orders from the State of Alabama, and (3) direct exposure of COVID-19 from a customer. Doc. 1 at 2.  The first allegation does not establish a causal relationship between COVID-19 and Dukes Clothing's

9

losses. The second allegation does not identify a physical loss because the closure orders had no tangible or material effect on Dukes Clothing's property. *See Hillcrest Optical*, 2020 WL 6163142, at *7. And the third reason does not constitute direct physical loss or damage and does not allege harm to property that requires repair, rebuilding, or replacement. At most, a COVID-19 exposure would require Dukes Clothing to clean and disinfect its stores. Therefore, Dukes Clothing has not alleged facts sufficient to find coverage under its policy with Cincinnati, and Count I is due to be dismissed.

The court does not address Dukes Clothing's arguments regarding the policy's pollution exclusion (*see* Doc. 25 at 13–14) because Dukes Clothing has not met its initial burden to establish coverage. *DiBenedetto v. Allstate Ins. Co.*, 469 F. Supp. 3d 1243, 1246–47 (N.D. Ala. 2020) ("In coverage disputes, the insured bears the burden of proving coverage exists."). The court also finds that any amendment to Dukes Clothing's complaint would be futile because the court finds as a matter of law that the policy does not cover damage caused by COVID-19, either directly or indirectly. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (holding that amending a complaint "is futile when the complaint as amended would still be properly dismissed").

**B.    Bad Faith and Negligence**

Counts II and III of Dukes Clothing's complaint allege that Cincinnati acted

in bad faith by denying insurance claims arising from the COVID-19 pandemic without investigating them. Doc. 1 at 19–21.  However, "[a] bad-faith-refusal-to-investigate claim cannot survive where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 260 (Ala. 2013).  The court has found that Cincinnati's reason for denying the claim was legitimate.  Therefore, Dukes Clothing's bad faith claims fail as a matter of law and Counts II and III are due to be dismissed.

In Count IV of the complaint, Dukes Clothing alleges that Cincinnati "negligently failed to investigate" its claim. Doc. 1 at 22.  Under Alabama law, tort claims are governed by the law of the state in which the injury occurred. *Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, 90 F. Supp. 3d 1256, 1260–61 (M.D. Ala. 2015).  Here, the alleged injury occurred in Alabama, where Dukes Clothing is located.  However, Alabama law does not recognize a cause of action for "the negligent handling of insurance claims." *Federal Nat'l Mortg. Ass'n v. GNM II, LLC*, 2014 WL 1572584, at *5 (M.D. Ala. Apr. 17, 2014) (quoting *Kervin v. So. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995)).  Therefore, Count IV also is due to be dismissed.

## IV. CONCLUSION

For these reasons, Cincinnati's Motion to Dismiss (Doc. 18) is due to be

granted, and all of the claims stated by Dukes Clothing are due to be dismissed with prejudice. A final judgment will be entered.

DONE and ORDERED on May 5, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE